## BENTON v. WARD et al.

*(Circuit Court, N. D. Iowa, E. D.   August 31, 1891.)*

1. RESCISSION OF CONTRACT—PLEADING—FALSE REPRESENTATIONS.
    A bill to rescind a contract, which alleges that defendants, being stockholders in a certain corporation, induced complainant to enter into a contract for the purchase of stock, representing that the corporation was sole proprietor of a secret process for treating metals, which was very valuable; that a patent had been applied for by the company; that it was ready to commence the business of treating metals by this process, and that, if complainant would purchase certain stock, he would be employed as president and manager of the company; that, relying upon these representations, complainant paid defendants the amount agreed upon for the stock; that the representations were false, in that the process had been known for years, patents having been previously granted to other parties; that the company was not ready to commence business, and could not furnish employment to complainant,—is sufficient on demurrer.

2. SAME—RELIEF IN EQUITY.
    Where such bill prays a decree of cancellation of the contract, the stock having been tendered to defendants, and repayment of the sum paid by complainant, the relief can only be had in a court of equity.

In Equity. Bill to rescind contract for sale of corporate stocks and for damages. Demurrer to bill.

*Carman N. Smith* and *Powers, Lacy & Brown*, for complainant.

*Rickel & Crocker* and *Chas. A. Clark*, for defendants.

SHIRAS, J. In the bill herein filed it is averred that the defendants, for the purpose of inducing the complainant to enter into a written contract for the purchase of 1,000 shares of stock of the Hawkeye Metal Company, represented and stated that the said corporation was the owner and sole proprietor of a secret process for treating metal, which process was known only to the stockholders in said company, and the nature thereof could not be revealed to any save stockholders therein; that said process was entirely new; was very valuable; that it would greatly increase the value of metals treated thereby; and that it was the sole property of the Hawkeye Metal Company; that a patent therefor had been applied for and would unquestionably be secured; that the company was ready and prepared to commence the business of applying said secret process to the treatment of metals, and that, if complainant would purchase the shares of stock referred to, he would be employed as president and manager of said company, at a salary of $3,000 per annum; that, relying upon these representations so made by defendants, who were at the time stockholders in said company, the complainant entered into a written agreement with them to the following effect:

"Article of agreement made and entered into this 20th day of December, A. D. 1889, by and between H. P. Benton, party of the first part, and J. H. Ward and Henry Rickel, parties of the second part, witnesseth: That the said second parties have this day sold unto the said first party one hundred shares of the stock of the Hawkeye Metal Company, a corporation duly organized under the laws of the state of Iowa; and the said first party agrees to pay the said second parties for said stock the sum of $4,000 on or before the 7th day of January, A. D. 1890. It is further agreed that said second parties will use their influence and best efforts to have said company, at its annual meeting in January, 1890, elect the said first party president and general manager of said company, and to induce the said company to pay the said first party the sum of $250 per month for his services as such president and general manager as long as he gives his individual time and attention to the business of said company in such position. It is further agreed upon the part of said second parties that they will contribute of the stock owned by them in said company their proper share, in order to create a fund to carry on the business of said company, or they will contribute in lieu of said stock their proper share in money to carry on said business.

"HENRY RICKEL.
"J. H. WARD.
"H. P. BENTON."

It is further averred that complainant paid to defendants the said sum of $4,000, and received the shares of stock according to the agreement, and came to Iowa for the purpose of acting as president and manager of said company in carrying on the business of treating metals according to said alleged secret process; that the said representations and statements so made by defendants were false, fraudulent, and untrue, in that the

said process of treating metals was not a new process, but had been known for years; that it was not valuable, but was in fact of no value whatever; that a patent had been previously granted for such process, so that the Hawkeye Metal Company could not hope to procure a patent therefor, and that the said company was not ready to engage in the business of treating metals according to said process, and could not furnish employment to complainant. Based upon these allegations, the complainant prays a decree for the cancellation of the contract of purchase of said stock, the same being tendered back to defendants; that the defendants repay the sum paid for said stock by complainant, with interest; and that damages and costs be awarded complainant.

To this bill a demurrer is interposed by defendants on the grounds—(1) that complainant has an adequate remedy at law, and, therefore, the case is not of equitable cognizance; and (2) that the facts averred fail to make out a case against defendants. It is not charged in the bill that the defendants knowingly made any false representations as an inducement to complainant to enter into the contract sought to be rescinded. It is charged that these representations were false, fraudulent, and untrue, but no averment is made of any fact showing bad faith on part of the defendants in making the representations which it is alleged they did make; and hence it must be held that the averments of the bill amount only to a charge of mistaken representations or statements made by defendants. It would be more satisfactory if the allegations of the bill were made more clear and specific in this particular, but for the present purpose it will be assumed that the bill is based upon the theory, not of false representations knowingly made, but of representations made supposing them to be true, but which, it is now averred, were mistakenly made, whereby complainant was misled into making the contract sought to be rescinded. It will not be questioned that granting relief in cases wherein parties have been misled through mistakes in matters of fact is clearly within the jurisdiction of a court of equity, and, therefore, unless the remedy at law is adequate, and as complete as that afforded in equity, the jurisdiction of the court cannot be successfully attacked. From the allegations in the bill contained it appears that the complainant was induced, by the representations made him, to purchase 1,000 shares of stock in the Hawkeye Metal Company, and thereby assume the responsibility pertaining to a stockholder in the company. The purpose of the bill is to obtain a rescission of the entire contract, and a restoration of the parties to the condition they occupied before the same was entered into. To this end, a retransfer of the stock must be decreed, as well as a decree for the repayment of the sum paid by complainant therefor. Relief of this nature is not granted in a court of law, which would be confined to a judgment for damages alone; and hence, if the complainant is entitled to a rescission of the contract and relief from the burdens imposed thereby, such relief can be had only in a court of equity.

Thus we are brought to a consideration of the question arising upon the second ground of the demurrer, to-wit: Do the allegations of the bill

show that complainant is entitled to a rescission of the contract whereby he became the purchaser of the 1,000 shares of stock in the Hawkeye Metal Company? In substance, the allegations made to induce the making of the contract were that the Hawkeye Metal Company was the sole owner of a secret process for treating metals, which was of great value; that it was expected that a patent therefor would be issued to the company; that the company was prepared to carry on the work of treating metals by such secret process, and that by becoming a stockholder the complainant would be assured employment at a remunerative salary. It is apparent that the value of the stock and the chances of employment were dependent upon the fact of the ownership by the company of a valuable secret process for treating metals; and therefore the material allegations charged against the defendants can be reduced to this one, namely, that the company was the sole owner of a secret valuable process for treating metals. According to the allegations of the bill, the defendants averred that the company possessed such process, and thereby induced complainant to become a stockholder in such company, by purchasing from them 1,000 shares of stock for the sum of $4,000, whereas it now appears that the company was not in fact the sole owner of any such secret valuable process, and consequently is not in condition to afford employment to complainant. In support of the demurrer, counsel for defendants have filed an able argument, in which it is sought to be maintained that complainant cannot obtain relief, because it is not averred that the representations made as an inducement to the contract were known to be false when made; and, further, that the subject of the contract was of a speculative character, and the representations made were merely the expressions of opinions and beliefs, and not, therefore, to be taken as conditions of the contract; and in support of these views are cited the following cases: *Development Co.* v. *Silva*, 125 U. S. 249, 8 Sup. Ct. Rep. 881; *Rawson* v. *Harger*, 48 Iowa, 271; *Sawyer* v. *Prickett*, 19 Wall. 160; *Gordon* v. *Butler*, 105 U. S. 557. These cases deal very fully with the rules to be applied to controversies of the character under consideration in each case, but are not applicable to a case so widely different in its facts as the one now under consideration. It is certainly not true that the right of rescission in equity is confined solely to cases wherein a party has knowingly and intentionally falsified the facts, for this would exclude the granting relief in the case of mistakes; nor is the principle that mere representations as to the value of that which in its nature is of uncertain or speculative value cannot be deemed to be false simply because not borne out by subsequent developments, applicable to a case of the character of the one now before the court. In the case at bar the representation made was that the Hawkeye Metal Company was the sole owner of a valuable secret process for treating metals, but that the nature thereof could be made known only to those who were stockholders in the company. Of necessity, under such circumstances, a purchaser of the stock could not avail himself of any opportunity for investigation on his own behalf. He would be compelled to rely upon the representations made to him. He would not

occupy a position of equality with the vendor, and hence could not be held chargeable with negligence in not informing himself of the value of the process which formed the basis for the value of the stock he was about to purchase. The defendants knew that the complainant must rely upon the statements and representations made by them touching the secret process said to be owned by the company, and therefore knew that the representations by them made were material, and that complainant had a right to rely upon their substantial truth. It is certainly too clear to be doubted that the complainant would not have entered into the contract sought to be rescinded, and become the purchaser of the stock from defendants, unless he had believed that the representations were true If, then, the representations were material, were believed and relied upon by the complainant, and were made under such circumstances that the complainant had the right to rely thereon, and it now appears that the same are not true, and that in fact the metal company is not the sole owner of any secret process for treating metals, and cannot, therefore, carry on the business for which it was organized, is it not made clearly apparent that the complainant has been misled, and has been induced to enter into a contract under such circumstances as to be entitled to a rescission thereof? The demurrer is overruled, with leave to defendants to answer the bill by the October rule-day.